The first case that I call today is Agenda Number 16, Number 130137, Mar-a-Glorioso v. Sun-Times Media Holdings, LLC. Counsel for the appellant, are you prepared to proceed? Good morning, your honors. My name is Damon Dunn. I represent the Chicago Sun-Times and Timothy Novak. Thank you for the opportunity today to address these important questions regarding our fundamental freedoms, which are secured by the First Amendment Press Clause and by the Illinois Citizens Participation Act. We would like you to heed Justice Hyman's call for correction and clarification of the law in these respects because the majority's opinion derogates those protections to disadvantage reporting on government investigations. I should begin at the end with Section 30, where the legislature says that it shall be construed liberally to effectuate its purposes and intent fully. Instead, we join Justice Hyman in his analysis that actually the majority encourages public officials to slap down inquisitive reporters. Are you asking this court to modify its opinion in Sandholm? Out of the box, your honor. We believe that we prevail under the proper reading of Sandholm, which is essentially what Justice Hyman says. We think there are three paths, actually, before this court, and though I am somewhat constrained as a litigant to litigate within the boundaries of the First District's precedent, Justice Hyman obviously is a little less constrained. You are not. And for reasons that I would go into, I would suggest the first path is you can apply Sandholm as the appellate court did in the Gural case, and we win. We win because there is truth, there's no actual malice, there's no special damages, and the recklessness test could easily be met by either of us. Counsel, under Sandholm, what is your initial burden in this case? Under Sandholm, my initial burden, and I want to get to your question, my initial burden under Sandholm in a non-traditional slap would be to show that the plaintiff's case is not genuine. Instead, in this case, out of the box, the majority made us prove that our speech wasn't genuine. Let me get to your question. In this is a traditional slap. Sandholm was discussing a non-traditional slap. I believe that this is exactly the kind of slap that the Texas Supreme Court identified this year, which is quoted in our reply brief, as exactly the kind of lawsuit by a government official against a reporter in response to a critical news story that we all can agree has been subjected to early testing on its merits and early appeals. I believe this court should look to Wright Development v. Walsh, which also, ironically, involved a sometime story published in the Pioneer Press. In that case, the court said, what's it, that this act plainly includes statements to a news reporter on public concerns. Because that's expressly encompassed, talking to the electorate. So you, I think, very basically said here that the traditional, or I'm not sure you said it's not traditional, but the case, for example, in Sandholm, which involved a person, a group of people, making statements about a public school teacher coach, that what distinguishes this case is because the defendant in this case is the Sun-Times and a reporter. Is that the key difference between the analysis in Sandholm and what we have here? Well, that's clearly a difference. But perhaps if we took Walsh literally, the key difference is the statements to the reporter are from Governor Pritzker. That's what was published. They didn't publish on an anonymous tip. They filed FOIA requests. They sought comment. They went all the way to the governor's office. The governor, through his spokesperson, gave us two statements. One, he promised to get to the bottom of any allegations of political bias regarding that decision, and he promised, or he requested, PTAB not to act until then. So that, I think, is … But you seem to be, I think we're first concerned about what's the proper analysis for any kind of anti-SLAPP motion. Before we get there, certainly what the court said in Sandholm was trying to understand the statute. It says the act's intent to strike a balance recognizes that a solution to the problem of SLAPPs must not compromise either the defendant's constitutional right of free speech and petition or plaintiff's constitutional right of access to the courts to seek a remedy for a damaged reputation. So the Sandholm court said there's a balance here that has to be struck. Do you agree with that? I agree that there's balance, but I also suggest that Sandholm put the balance in the wrong place, because the act elevates – it's not supposed to be equal. The act elevates speech. In the Walsh case, very similar facts to this case. Let me give counsel back to what Justice Overstreet asked. Are you suggesting that we should modify Sandholm? I'm suggesting you should, but I'm also saying that that's not necessary to decide the sometimes case. And if the court wishes to address Sandholm, I am more than prepared to do it. I don't want to do it to disadvantage my client by attempting to overreach and saying we depend on you changing the Sandholm decision. That, we don't have to argue. But I do believe on behalf – not so much as the sometimes, but as the sometimes as an agent of the people and the citizens of Illinois – I believe Sandholm is incorrectly applied in this context. It's incorrectly applied in most contexts with investigative reporting. If we look at the act, we should do what Walsh does. Walsh, this court said, this is protective speech, statements of the reporter about public affairs. We default then to section 20C of the act. We look at the plaintiff, and we say you have clear and convincing evidence that you're not showing speech, that this speech isn't genuine. And in Walsh, they looked at two things, knowledge and was it a false factual statement. And in both cases, knowledge and a false factual statement, the court said plaintiff failed his burden and the case. Why do we make judges in obvious slaps jump through three, four, with the majority maybe five or six hoops? That's obviously not what the legislature intended when it asked for a decision 90 days after notice. It expected that if you're going to file speech that on its face chills, talking about how we are governed in this state, you as the plaintiff, if challenged, need to put up or shut up in 90 days. So, you're not making a broad statement that every defamation case that where the statement by the defendant has some kind of public interest is by definition a slap suit. You're not saying that every single or are you saying every single lawsuit of a plaintiff against a defendant who speaks to the public interest is automatically a slap suit? Is that what you're saying? How broadly are you drawing this? I'm drawing it, first of all, broadly enough that my client wins. But for the court's purpose, I believe that any time that we have a public official suing over a critical news story, we're in traditional slap territory. So, no public official can ever sue for defamation? No, no. I think that where Sandholm misplaced the, misplaced its emphasis and its analysis, because remember, Sandholm didn't come up with any challenge to the merits. The parents squabbled with the basketball coach. The court said at the end, go back and find out if this case has got merit. Counsel, can you walk us through the analysis that we should undertake in this matter? Where do we start? Who has the burden? How do we look at this? I gladly do that. Do you want me to do it in this case or do you want me to do it as a broader perspective? In this case. In this case, I would say, we look at Sandholm. Sandholm says, this is statements to a news reporter on public concerns addressed to the electorate. Even the majority agreed that this was within the slap language. The majority endorsed Ryan for this. They just came up with this carve-out for unelected public officials who get removed, which, as Justice Hyndman said, is beside the point because it doesn't address the reform aspects of finding out what happened. So the first step is to determine whether or not it comes within the purview of Sandholm. Is it? Well, is it a traditional slap? I think Sandholm on its face is, how do we screen for the non-traditional slaps? How do we screen for the cases that we don't know if it's a slap or not? How do we know if this is just a squabble between parents and a high school basketball coach? That's when Sandholm comes into play. So your position is there is no dispute that this is a slap here? Well, obviously the majority felt that you can't slap an unelected official, but I think Section 10 of the Act says clearly to the contrary. Officials and employees are covered. So no, I think this is clearly a slap, Your Honor. And when I say no dispute, I'm referring to between the sides in this case, not the appellate court. I'm saying is there a dispute on that issue? I can't speak for Mr. Zizek. I think there's no dispute that the whistleblower said Moria Gloso gave a directive that they staff complied with, no dispute that there was an investigation, no dispute that sometimes took no outcome. But I also think that under Walsh, there can be no dispute that this is a slap. Okay, so first step, determine whether or not it's a slap, and whose burden is that? And then where do we go from there? Under the statute, go directly to the plaintiff. The plaintiff has the opportunity. You're going to file a complaint in this arena challenging public speech. Section 20 puts the burden on the plaintiff. And that's very easy. I mean, if you're a circuit court judge, why are you trying to figure out what people's motives are? And why are you trying to decide what recklessness might be under these unworkable and subjective effects? Why not just go to the plaintiff and say, hey, do you have, as in Walsh, do you have evidence that this statement was intentionally false? File an affidavit. Make some discovery if you've got good cause, which I don't think there was in this case. But put up a shot. We have 90 days. Let's make a decision. The legislature wasn't so much concerned, I think, with immunity. I read the statute more as placing the burden of proof early on the plaintiff in these cases. It's more of a procedural statute more than a substantive statute. Substantive, yes, that would say, and I think some of the court's questions seem to be directed at this. Well, are we going to immunize this entire spectrum of speech? I don't think the statute does that. I don't think that was what the legislature intended. I think the legislature intended is when we get into this particular arena, we want an early test and maybe a slap on the wrist. If you filed a case that maybe lacked candor or maybe admitted the real facts, that's what the legislature wanted. To be fair, you're going to have to, as a plaintiff, meet these tests eventually under the First Amendment. You're going to have to come up with clear and convincing evidence of actual malice in this case. You can't just state by not filing an affidavit. I mean, our precedent said, you don't file the counter affidavit, fatal to your case. The slap statute is, I would suggest, somewhat unusual in that usually we, in considering whether to dismiss a complaint, the balance usually is whether the complaint states a cause of action or whether there's affirmative matter, a defense, a defeat, a recognized cause of action. But here the statute seems to require some inquiry into the intent on the part of the plaintiff. Why did the plaintiff file this suit? I think that's, to me, that's kind of the difficult part. How does a court determine intent, whether or not the purpose for the lawsuit was in fact retaliatory, was to shield free speech, or was it, in fact, to pursue a constitutional right to damages for damages to one's reputation? I mean, usually we don't talk about dismissing a case because of intent. So how do we sort that out? How does a court sort that out? It seems to me that's what Sanholm was trying to figure out. I think Sanholm was only doing that because we had multiple parents attacking a high school coach. I don't think Walsh was concerned with intent at all. I don't think Ryan was concerned with the intent of the newspaper expose about judges. I don't even think the majority was particularly concerned about intent. But I would suggest that intent is the wrong place to put the court's emphasis. If you want to actually examine this, you should look what Justice Hyman says about merit. If it's meritless, then obviously the intent shouldn't have been there. Meritless should trump intent. It's objective. We don't have to get into turn-of-client privilege as to whether something's reckless or not. We just make an objective test. Do you have some evidence that this was a knowing lie? Do you? Give it to us, and the case can go forward. Don't give it to us, and we do what the legislature says. We terminate the case. The Massachusetts Supreme Court… So should we consider whether or not the suit is brought in order to seek personal damages or harm to reputation versus whether or not it's brought to speak and participate in government? Should we even be engaging in that type of analysis? I don't think you should, Your Honor. I don't see how it's possible. I don't see how demigods could figure that out in 90 days. I don't believe that the legislature intended that at all. They intended to put the burden directly in 20C on the plaintiff who files a case that shows speech about public affairs. That's what they decided to do. I think that it's fair. That determination has to be made eventually instead of three years later. How would the plaintiff do that? You said affidavit. What other method would the plaintiff be able to use to convincingly meet his burden of proof at that stage of the proceedings? Well, in this case, if there was – if the final report of the Ethics Commission said In re Wagoner instead of In re Glorioso, he might have submitted it, but he didn't because it says In re Glorioso, and it says that he was fired not because of anything we wrote, but because he violated the Illinois Records Act, and that's why they barred him from employment. If he had a OEG whistleblower complaint attached to his complaint, which he did not, forced us to put it in, and it didn't say that he told the chief AHA to switch the opinions, the opinions were switched, and everybody acted according to his directives, well, you know, if it didn't say that, then he could put it in, and he could say, well, you read it, and you said it said, you know, he pushed and pressured instead of directed. Well, frankly, I think told and directed is worse, but there's ways to do that. He tried to do it in Walsh. He put the deposition. He argued that the defendant was lying. This court looked at it and said, no, actually, it all turned out to be true. He wasn't lying. Case dismissed. And the Massachusetts Supreme Court, from which Sandholm took this analysis, took its inspiration, just this year, in Bristol-Asphold, backed away from the whole thing. Said it strays from the statutory language. Says it gets too tied up in subjective motives. Said it leads to inconsistent results, and we don't need to look any farther than the Doral case in the 1st District, and in this case, to find out how the results can differ on questions that really have nothing to do with the slaps. So I believe that if you wish to retain Sandholm and use the Sandholm screening mechanism for the cases that just aren't obviously a slap, a squabble about a high school basketball coach's treatment of his players, instead of the governor promising to get to the bottom of what's happening in the PTAB. No, no, it's the report of that. Well, yes, we reported it, and that's what Sandholm, exactly what happened in Sandholm. The fellow comes out of the meeting, talks to the reporter, the Supreme Court says it's enough. In this case, just remember, we did not go on the tip. If you look at the story, well, really, it's about what the governor said. We had publication for months to get that confirmation. That's what the story was about. But what does the governor investigate? Well, we had to say something, so we said this is what he's investigating. And, of course, we now know. The governor was talking about the plaintiff. The governor investigated the plaintiff, and the story was true. I think, actually, it's an easy case under Walsh, and it's not that difficult a case under Sandholm. But I believe all of your questions really, in a way, are pointing up the problem with Sandholm. Sandholm is asking you to probe people's minds. Sandholm is asking if you're going to use this recklessness test about dad dandrums and timing. How can you prove that without invading the attorney-client privilege? How can you get into the reporter's motives without getting into the reporter's privilege? I think Sandholm more than breadcrumbs tried to explain that by saying the way to do that is the reporter, the defendant, has to come forward and say this was meritless. And if it was meritless, then the only intent could possibly be would be retaliation. Isn't that how Sandholm sets up the analysis? I don't know if that's how Sandholm sets up the analysis because it doesn't really have a meritless retaliatory test in it. Meritless and retaliatory shows up as descriptions of slaps. Sometimes we see them two together separated by a comma. Sometimes we see meritless without any reference to retaliatory. I'm not really sure that Sandholm has a test other than to have, you know, let's examine whatever the plaintiff's motives were. And in this case, we're examining the defendant's motives, so we're not even in the Sandholm landscape. That's why I believe, in fact, frankly, it's not clear. That's why I'm standing here. The court wants to know what to do with Sandholm. Amici have a path for Sandholm just as Heinen has maybe a shorter path, one that preserves Sandholm as much as the appellate courts can. But if you look at the appellate court analysis all across the board, they don't know what to do with Sandholm. You've got cases that say meritless or retaliatory. You've got cases that say, well, it's meritless. Counselor, you've read the cases. Okay. Please bring your remarks to a close. All right. Well, all I can do is, I mean, if you want to cut and paste Justice Heinen's dissent, I'm happy with that. But the citizens of Illinois, I really think you should take a hard look at Sandholm, a hard look at Wright, and take the steps that restore us back to the forefront of championing these rights instead of being the state that's behind everyone else. Thank you for your time, especially for the consideration of this question. Thank you. Counselor, we are good. Good morning, Your Honors. My name is Philip Zizook, and I represent the plaintiff, Mauro Glorioso, who was present in court this morning. Counsel, may it please the court, what the defendants are trying to do in this case is not only argue for a judicial amendment of the Citizen Participation Act, but now I'm hearing for the court to basically rewrite Sandholm. In the circuit court and in the appellate court, they were standing behind Sandholm and embraced Sandholm. And their argument was, we were seeking to participate in government, and we were seeking a favorable governmental result. That is the first test under Sandholm. That is the first test that is their burden in making a motion under the Citizen Participation Act. In fact, they did try first to argue the merits of the case and the lack of merit in Mr. Glorioso's complaint before they filed an ICPA motion. They filed a 2619.1 motion to dismiss for pleadings issues and on the merits. It was denied. Their motion for this clear violation of speech rights came 60 days after the denial of their pleadings motion. And they titled that a motion to dismiss under the act or in the alternative for reconsideration. And so Judge Sheehan in the circuit court denied both prongs of their ICPA-related motion and then finding that it was not a slap. And then the appellate court on two occasions found the lawsuit is not a slap, undertaking the correct procedure. And the lack of dismiss on pleadings prong wasn't properly before the appellate court because they took an interlocutory appeal solely on the ground of the denial of their slap motion. So the first question that has to be answered is whether their speech was as a citizen seeking participation in government and did that speech constitute a genuine aim to get governmental relief. And the answer is no. They reported a news story on the basis of this anonymous OEIG complaint. That's all they did, they reported news. Counsel, are you saying that a news story can never satisfy the requirements? No, Judge, it can. And to even go back a second, what their primary argument in their briefs in this court is that speech on matters of public concerns should be protected under the slap act. And I emphasize should be protected because it is not protected now to have speech protected under the ICPA. It has to be speech with a genuine aim to achieve governmental relief. There's no request for relief here. So that if a news article, if media speech seeks a governmental relief, a government result, yes, it can be protected. In fact, we know that that is not only the achievable but has been determined because that's the Ryan case. Contrary to what defendants have argued in this case, the Ryan case was not speech related to a public concern. It was, it was a matter of public concern whether judges were leaving the courtrooms early on a daily basis. But what the court found. I'm sorry. What the court found was that it not only was on public concern, but it sought favorable government relief. And it was that that was the basis for the court's holding, which said, perhaps most importantly, and I'm quoting from the court's opinion. Perhaps most importantly, the report sought comment from the Illinois Supreme Court and Chief Justice Evans, Chief Judge Evans, on the investigation's findings and urged them to take action. Such activity is well within the scope of paragraph 17 of the act. And it was only because of that activity that it was found to be protected. The same thing occurred in the. So, Counselor, are you saying that had the news story included some phrase or discussion that, you know, this investigation continues and we urge the PTAB or and all their actors to get the assessment right on behalf of the taxpayers, would that have cured? Well, here's the bottom line. They didn't request any relief of any kind. They didn't say, for example, we think that PTAB has to investigate its own procedures to ensure that political bias is not entering into determinations of people's tax appeals. Or they didn't say Glorioso should be fired immediately. Or they didn't say we find that this report is just facially conclusory and that Glorioso should remain an employee in good standing. They didn't seek anything. They didn't seek modification of PTAB standards. They didn't suggest any relief. Counsel, back to Justice O'Brien's question. Is that if they had sought some relief that was clear, would that have cured the defect? I think it's if they requested government relief. If they genuinely had speech that aimed for a governmental, favorable governmental result, it could have, but it didn't. In the story. In the story. You're saying in the story. Yes, end of story. In the story. In the story. They didn't seek this relief in the story. Yes, because otherwise, for example, one of the flaws of the dissent in this case is that he says, Judge Hyman, Justice Hyman, says, well, something like this. Perhaps reading the report could lead PTAB to check its own procedures and determine if anything needs revision if it does. I mean, it's so speculative and it puts the burden on the newsreader to think, well, maybe we should do this. But the act doesn't rely on third parties. The act relies and puts the sole burden on the speaker to show that it was participating in government, not that it was exercising a First Amendment right of report, but that it was furthering. It was participating in government to seek and procure favorable government action. That is entirely the burden of the movement in these ICPA cases. Here, they just had a news article. And that's the difference between the Garrido case that counsel cited. There are two Illinois cases that went through the appellate court, both of which sought, were speech related to, they consist of negative comments about aldermanic candidates. They're unqualified. They don't live in the district. They really live here. They shouldn't be elected. What the courts in those cases said, they didn't say, oh, this is a matter of public opinion, so it's protected under the SLAPP Act. No. They went through a total analysis and found that this is speech urging the electorate, which is a specifically protected class under the ICPA on a level with government. It appeals to the electorate to vote a certain way in an upcoming election. And the court said correctly that was speech in furtherance of government relief. And so it is protected under the act. These words of the court going through the analysis, it wasn't based on public opinion. It was based on legitimate, genuine claims or requests for governmental relief, how the voters were going to vote in this election. And there was advocacy behind that speech. You know, there's the Bakken-Hatch appellate court decision. That was the one that concerned a blog that reported Seventh Circuit Court of Appeals decisions and posted comments on them. The appellate court in that case said, well, yes, it is speech on the matter of public concern, but it's not protected under the ICPA because you're not taking any kind of position. You're not seeking any kind of relief. You're not urging the electorate, the public, or government to do anything. You're just reporting news. And that is what happened in this case. And that is why the defendant's speech in this case is not an ICPA case. And the motion was denied in the trial court, in the appellate court. And now they're trying to get a result in this case that speech on the matter of public concern that doesn't seek any relief is protected under the ICPA. Now, the difference between our situation in Illinois and the Texas statute is that there is a Texas statute that does say that statements on matters of public concern are now protected and you can file a slant motion and you no longer have to prove that it was in further of seeking governmental relief. Illinois' act has not been amended. We still have the same slap act that we've had for more than 10 years. There's no amendment. How can the court now say, oh, yeah, now matters of public concern that don't seek governmental relief are protected. It can't happen. Now, the legislature could consider an amendment, and maybe it will at some point, but it hasn't. And our slap act still says you need speech that is genuinely aimed at procuring favorable government action in order to have a valid slap motion. So, counsel, if we oppose the appellate court in ruling your favor, what happens? You won't oppose. If you rule in my favor, the appellate court agreed with me. It's just this opinion, this dissenting opinion from Judge Hyman that has disagreed with me. Well, what happens next if we agree with you? The case proceeds like all civil cases do. So it goes back to the trial court and you have a trial. Is that what you're asking us to do? Yes, the case should proceed. We, because the slap act says what it says, we haven't been able to get out of the gate. This case is several years old. But the minute they filed their slap motion, discovery was stayed and everything stopped until there's a resolution of the slap issue. So, yes, if there is a remandment, if they didn't file a petition for leave to appeal, we would, the mandate would issue to the circuit court. We'd appear for a status conference. In some of these slap cases, you can do some limited discovery to figure out whether the elements are met. Did you have any discovery at all in this case? No, we did not. And I don't think we have legal arguments. We didn't have factual arguments because on its face, their articles don't seek any governmental relief. They report news. And as I said, Ryan is a perfect example of a news article or news reports can seek government relief. They didn't. You said there were two steps of the analysis. And you've been focusing and certainly you want to give you an opportunity to do that. First one is to this issue about public concern versus seeking some kind of relief from government. How do you frame and who has the burden on the second step? On the merit? Yeah. We went through that analysis in every courtroom. So circuit court, appellate court. Who has the burden to demonstrate whether this is meritless or not or merit? Well, they first have the burden to go forward and so make a prima facie showing of lack of merit. And we respond to those things. And in each case, the trial court and the appellate court agreed with us that they didn't meet their burden on proving that the case was meritless. It's their burden to show lack of merit. And that's actually what they tried to do in their first pleadings motion that was in the circuit court. That's why they first filed the 2615-2619 motion. But the court rejected all of those. We fully break the issue. A decision was entered. And all arguments were considered. So that in the normal course occurs in every slap act. That's not a radical position. And there's certainly no shifting of burdens that is appropriate. We shouldn't on their motion have to first come forward to show that our case has merit. We brief the issue in the course of the briefing. But they first have to show that they sought participation in government and genuinely sought favorable government action. Then, as Sandholm says, you shift to the burden of merit. Because in Sandholm, this court did recognize that the ICPA on its face recognizes that there is a balancing of interests. And just as defendants have a right to say, hey, we are trying to participate in government. And we make requests for relief from government. A plaintiff has a right, if he has been injured, to file a claim and have a chance for his day in court. And that's what we did in this case. I do want to speak very briefly on right development versus Walsh. Because, again, defendants argue that in that case, this court simply found that the speech simply was political expression expressed to the electorate. But that's not what happened. This was a public meeting at an alderman's office where a modification of the Cook County Building Code was at issue. And at the time, there had been rampant condo development and conversions. And there were construction issues and untold expenses to people that lived in this area. And the court found that in this context of a public meeting to discuss the proposed modifications of the building code and the problems, that the gentleman Walsh's speech were in furtherance of his right to petition government. It wasn't political expression that was protected. It was firmly. And that's on page 636 of the court opinion. It was firmly within the ICPA. And so the ICPA works and works without any modification. And there's been no amendment of the statute. They just didn't meet their burden under it. Thank you, Judge. Thank you very much, Counsel. Thank you. Supply from the appellate. Let me just start out. Walsh says the act does not limit the protective rights to petitioning the government. Section 10 of the act protects information and reports even before it gets to opinions and arguments. Obviously, the legislature saw a distinction, and so did this court and Walsh. Participating in government is informing the electorate about possible needs for reform and getting to the bottom of what's going on. With respect to judicial amendment, I hesitate to say this, but commentators are fairly uniform in saying the judicial amendment was when this court inserted solely into the act, and those are referenced in our reply brief and the amicus. I don't believe that term served any purpose other than to sow confusion with the application of the act. Certainly, the act does not make these kinds of distinctions. It talks about the right to speak freely and otherwise participate in government and then sets up a system for identification and adjudication under Section 5. Then, in Section 15, it says you're protected regardless of intent and purpose. That's what they meant. But what's the safeguard? The court's concerned about safeguard. The court's concerned about screening. The court's concerned about access. All that's true. What the legislature decided to do is in 20C. After you file a motion, the judge will dismiss unless the court finds the responding party has produced clear and convincing evidence that the acts of the removed party are not immunized or not in furtherance of acts immunized from liability in the act. The statute's very clear. You have an early hearing. You ask for the proof. If it's meritless, well, then obviously the intent couldn't have been legitimate on the plaintiff's part. If you have other factors, such as the appellate courts have been searching for, you could perhaps include those, too. But I really think that it just comes down to three things. Three things that the Constitution says, the United States Supreme Court says, this court has said it's a lie of technology and imperial clothing are much closer facts. Was it knowing? Was it factual? Was it false? Here we have an uncontested affidavit. We have a complaint that sort of says that all these inferences and depictions took place, but nowhere do we see anything that actually turned out to be factual. And the only facts we have are who was the governor talking about, who was he investigating, who was he going to get to the bottom of? Plaintiff. Counsel, could you respond to the argument that how this procedurally played out, that certainly there was a traditional motion to dismiss under 2613 and also 2619, where the defense had an opportunity to bring all of these kind of issues to the forefront, to the court. All possible defenses, pleading infirmities, all of this were brought to the court, and the court denied all those motions. How does that figure into our analysis of what your opponent says is a two-part test, but at least on this issue of merit? Well, it's all de novo. I mean, it is all de novo. And partly this is, as the New York Times, the global relief case says, you know, in time, it was all there. How do we do – why is it all de novo? Why is it – how does this court – Because they're all questions of why. This is a case where we had to take a complaint, and we argued – And all of those issues were before the trial court, and the trial court rejected them. Yes, it did, and we believe that that was error, and so does Justice Hyman, and for the reasons Justice Hyman stated. And I think that – I can't even understand. How do we do an innocent construction analysis when all we talk about is a plausible defamatory construction? Well, that's not even the kickstarter for the innocent construction argument. You still need a false fact, as Imperial teaches us. And then in Green, this court teaches us we have – we can't balance. We have to go look and rule out the alternative innocent constructions. We never even did that. The structure of our analysis should be on the issue of meritorious versus meritless. What was before the trial court on the 2615, 2619? What arguments were made? What affirmative matter was raised? And we should be looking at all of that to make this determination? Is that the universe of what we should be looking at? Certainly you can, but you don't have to. You could end this case right now and say, where's the actual malice counteraffidavit? It's over. That's what the Constitution requires. That's what the Supreme Court requires in the United States Supreme Court. But the trial court rejected that. I don't even think the trial court even looked. We didn't get the statutory hearing in this case. We never did. You had a 2615, 2619. We filed the 2619-1 because we said that pressure and push under the precedents are not precise facts under imperial cloning. So we should win on the pleadings. And we also said because, hey, you didn't attach the rest of the documents. But at that point, at that point, we didn't have the final report. Plaintiff was still trying to block it from publication. So we didn't have that with us. We didn't get that until later in the process. And because even Sandlow says, and, you know, the appellate courts, I think, are all hung up on can we decide this even under 2615? Do we have to wait until 2619? I think that's all beside the point. That's dancing on pins. I think the 20C tells you what you need to do. You can do it at any time in the proceedings because, as in the global elite case, you don't find out that the investigation is true until later. You don't have the public evidence proof until later in the case. So quite frankly, what happens if he succeeded in delaying the final report even further? Okay, now we don't have our slam-dunk truth evidence. Does that mean we file later? We can file again when the evidence comes out? Well, it certainly should seem that justice would require that. And in this case, it just keeps mutating. I mean, the complaint says I'm not investigated. All right, the appellate court and the circuit court come up with this alternative theory that's not even pled that, you know, all these other people should be blamed. Well, we blame those people. We say, you know, members of the staff in the story. We just don't give their names because if we were to report that ALJ Wagoner was investigated, I'd be standing here defending the defamation case by him. And I'd be on tenuous grounds because he was never investigated. It's all this blame-shifting that the circuit court and appellate court, I think, should be prevented by this court. One of the other things, besides sample, that this court should really look at is the treatment of all of the precedents by the appellate court. They're now going to confuse and cause mischief for all appellate courts with respect to affidavits, special damages, innocent construction. I know what you can do in the imperial case, which I did argue. Once the court found that you didn't have a precise false factual statement, all the rest of that went by the board. And I think in this case, you could probably do the same thing. But I certainly don't think that we should be leaving this mischievous rulings regarding these established precedents until now. In my last minutes, I would say, once again, I don't think you have to change Sandholm for us to win this case. But I do think you should revisit Sandholm in light of Walsh v. Wright. You should elevate Walsh v. Wright over it. I think injecting solely into the statute was a judicial amendment. And I don't think it is borne out, just as in Massachusetts, the way that court expected it to happen. I think all it's done is cause confusion, encourage slaps, and sow problems throughout the various districts of the appellate court who are wrestling with this ever since. That's not what the legislature intended. They intended, if it's in this arena, go to the plaintiff. If you wanted to take the discovery, you could have asked. You didn't. You didn't want to file an affidavit. You didn't want to file a final report. You didn't want us to see the redacted portions. You still have it. But you could have, it's his burger. And when you get into that arena, you can sue celebrities, you can sue your neighbor, you can sue all these other people. The act has no application. All the act says, if you're going to sue in this arena for participation in the rights of speech in effecting government, then you should say, what's your ethics? Not hide behind tactical pleadings. You can do it at any stage in the process. I know, to justice, you're looking at that procedural situation. But quite frankly, a slap could be merilous on the face of the complaint. A slap could be merilous because of an affirmative defense such as statute of limitation. A slap could be merilous because it turns out that, oh, you did have a complaint that said you gave a directive. And you were investigated. And you weren't fired because of anything that's been published. If the court has any further questions, I will stand on my brief. And once again, thank you very much for your time and attention, and particularly for your time and attention beyond the contours of this particular case. For future citizens who wish to speak freely in Illinois. Thank you very much, counsel. This case, number 130137, agenda number 16, Morrigo Ovioso v. The Sun Times Media Holdings, will be taken under advisement. Thank you both for your arguments.